## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GEORGE R. BANKER
11003 John Paul Jones Avenue
Fort Washington, MD 20744,

      Plaintiff,

      v.

CHRISTINE WORMUTH, SECRETARY,
DEPARTMENT OF THE ARMY,

      Defendant.

Civil Action No. 1:22-cv-01445

## COMPLAINT AND JURY DEMAND

Plaintiff, George R. Banker, by and through undersigned counsel, states as follows:

### JURISDICTION AND VENUE

1.     This action is brought under Title VII of the Civil Rights Act of 1964, as amended, 42 *U.S.C.* § 2000e *et seq.* ("Title VII"), and the Age Discrimination in Employment Act, 29 *U.S.C.* § 621 *et seq.* ("ADEA"), seeking promotion, back pay and other relief for discrimination in employment based on race and age. This Court has jurisdiction pursuant to 42 *U.S.C.* § 2000e-16(c) and 29 *U.S.C.* § 633a(c).

2.     Venue lies in this Court pursuant to 42 *U.S.C.* § 2000e-5(f)(3) and 29 *U.S.C.* § 633a(c) because the discriminatory employment practices challenged in this action were committed in the District of Columbia.

1

## PARTIES

3.      Plaintiff, George R. Banker ("Plaintiff"), is a 72-year old African-American male who has been employed by Defendant as a nonappropriated fund ("NAF" or "NF") employee of the Army in the full-time salaried civilian position of Sports Specialist (ATM Coordinator) since August 2003.

4.      Defendant, Christine Wormuth ("Defendant"), is the Secretary of the Department of the Army ("Army"), a military department, as such term is defined pursuant to 5 *U.S.C.* § 102.

## FACTS RELEVANT TO ALL COUNTS

5.      The Army Ten-Miler ("ATM") race is one of the top three largest 10-mile running races in the United States with 35,000 registrants from around the world.

6.      Participants in the ATM race include military personnel, civilians, wheelchair athletes and wounded warrior athletes.

7.      The ATM race is held annually on a weekend day in October and the scenic 10-mile racecourse starts and finishes at The Pentagon Building in Arlington, Virginia, and winds through the streets of Washington, D.C., providing its participants with views of iconic buildings and monuments along the way.

8.      In addition to the showcase ATM 10-mile race, drawing approximately 20,000 spectators and involving over 3,000 support personnel, the annual race weekend events include a pre-race pasta dinner, youth run, youth activity fair, and Expo featuring up to 100 exhibitors and displays.

9. The ATM office is a division within the U.S. Army Military District of Washington ("MDW"), located on the grounds of Fort McNair in Washington, D.C.

10. According to the ATM's website, "[a]ll race proceeds benefit MWR programs."

11. The Army's Morale, Welfare, and Recreation ("MWR") programs provide recreational, social and community facilities and programs at Army installations.

12. Plaintiff was hired as a Sports Specialist in August 2003 by then ATM Event Director[1] James Vandak, at a pay grade of NF-03.

13. In January 2007, Plaintiff was promoted to his present pay grade, NF-04.

14. In his position as a Sports Specialist, Plaintiff has continuously been responsible for the development, planning, and management of the operations of the ATM weekend events, which includes the coordination of event operations and logistics with various groups, units and agencies; the coordination of over 600 volunteers from military and civilian entities; the planning and management of the youth activities and race events; management of all federal, state and municipal permits; and the negotiation of contracts for ATM supplies and equipment.

15. Plaintiff had also served as ATM spokesperson during meetings and in a community outreach program at local schools to ensure that the ATM is recognized as a valuable community asset. But Plaintiff's role as ATM spokesperson was curtailed as a result of the appointment of Matthew Zimmerman as Race Director

---

[1] The title "ATM Event Director" is also referred to herein as "Race Director."

and the promotion of ATM Marketing Manager Maida Johnson to Deputy Race Director.

### Non-Referral to "Best Qualified" List/Non-Selection for Army Ten-Miler Race Director Position

16.     In April 2019, Plaintiff's then first level supervisor, Race Director James Vandak retired, creating a vacancy in that position and thus an opportunity for Plaintiff's promotion to a higher pay grade.

17.     In April 2019 prior to Vandak's retirement, William McGarrity, Deputy Director for Operations/Deputy Chief of Staff, J/G-3 Directorate, MDW and Joint Forces Headquarters – National Capital Region, Fort McNair, Washington, D.C., held a meeting with Plaintiff and his co-worker, Marketing Manager Maida Johnson.

18.     Plaintiff and McGarrity had first met in or about 2012 and thereafter Plaintiff gave presentations in his role as ATM spokesperson at meetings where McGarrity was in attendance.

19.     McGarrity became the second level supervisor of Plaintiff and Marketing Manager Johnson in or around February 2018.

20.     During that April 2019 meeting, McGarrity discussed with Plaintiff and Johnson their respective roles and responsibilities during the transition period following Vandak's then pending retirement and prior to the appointment of a new Race Director. McGarrity also informed them that, *inter alia*, a vacancy announcement for the Race Director position would be posted and they could both apply. Plaintiff responded that he would apply.

21.    McGarrity, who is a Caucasian male, was at that time 54 years old and the hiring official for the selection of the new Race Director.

22.    The vacancy announcement for the Race Director position, "Supervisory Sports Specialist (ATM Event Director) NF-05", was posted on the USAJobs.gov website from June 12, 2019 to June 17, 2019.

23.    On June 17, 2019, Plaintiff, who at that time was 69 years old, applied for the Race Director position via the USAJobs.gov website.

24.    A total of five (5) individuals were interviewed for the Race Director position based on a list of the "Best Qualified" applicants referred by HR Specialist Nicole Bell in response to a request for such list by McGarrity.

25.    Although Plaintiff satisfied the "Best Qualified" requirements – *i.e.*, "Individual with Bachelor's Degree and 5 or more years' experience in coordinating internal/external security, medical, and event operations for a major sporting event, national security event or DoD event involving 35,000 or more participants - Plaintiff's name was not placed on the list of "Best Qualified" applicants and therefore, he was not granted an interview.

26.    On or about July 9, 2019, the interview panel selected Matthew Zimmerman for the position of Race Director and Plaintiff's co-worker, Maida Johnson, was designated as the alternate selection.

27.    At the time of his selection, Zimmerman, who is a Caucasian male, was 50 years old and had retired as a Colonel of the U.S. Army approximately six months prior in or about January 2019.

28.     The alternate selection, Johnson, who is a Caucasian female, at that time was 42 years old and had only been employed with the ATM since May 2016 as its Marketing Manager.

29.     On July 17, 2019, Plaintiff sent an email to HR Specialist Bell inquiring as to whether his name was on the referral list for an interview. Bell responded to him the following day that the hiring official requested a list of applicants that met the Best Qualified criteria first, all other eligible applicants may be referred as needed, and a status update should be sent to him via email no later than next week.

30.     Plaintiff received no such status update but rather, on August 5, 2019, Maida Johnson announced in the ATM office that retired Army Colonel and former MDW Chief of Staff Matthew Zimmerman had accepted the Race Director position with a projected start date of September 5, 2019. McGarrity had formerly been MDW Chief of Staff and Zimmerman was his successor.

31.     Later on same date, Plaintiff timely initiated contact with an EEO Counselor and alleged, in pertinent part, that Defendant discriminated against him because of his race (African-America) and/or age (YOB: 1949) when: Plaintiff was not afforded an opportunity to interview for the Race Director position, which resulted in Plaintiff's non-selection for the position; Plaintiff was not considered for the position of Deputy Race Director in May 2019; and Plaintiff was not compensated for performing supervisory duties.

32.     The ensuing investigation into Plaintiff's formal EEO complaint, for which the Investigator issued a report on August 19, 2020 ("ROI"), revealed that

McGarrity, motivated by race-based and age-based discrimination premised upon his knowledge of Plaintiff's race, approximate age range, and qualifications, used his position as the hiring official to bias the selection process to favor Matthew Zimmerman, the younger, less-qualified Caucasian candidate McGarrity had pre-selected for the Race Director position.

33.    In May 2019, McGarrity took Zimmerman out for a beer to talk to him about taking the Race Director position.

34.    Thereafter, on or about May 24, 2019, the position description for Race Director was rewritten at McGarrity's request with Zimmerman in mind. Specifically, the addition of "Best Qualified" criteria to screen applicants (see para. 25 above) and a requirement of secret clearance or ability to gain secret clearance was a reflection of Zimmerman's military experience and top secret clearance while serving as Chief Operating Officer & Director of Operations from June 2014 to June 2017 and as Chief of Staff from May 2017 to January 2019 for the Department of Defense ("DoD") at the MDW.

35.    The interview panel consisted of McGarrity and three (3) individuals who were selected by McGarrity and his second level supervisor, Colonel Brandon Robbins.

36.    There were no NAF MWR and/or ATM employees on the interview panel and all but one of the interview questions were centered on military leadership and were irrelevant to NAF civilian employee leadership and planning and sponsorship of MWR events open to the public, such as the ATM race.

37.    On the day the interviews were held, McGarrity was seen in the hallway patting Zimmerman on the back telling him "Don't worry brother. We got you. We will send you the onboarding instructions."

38.    McGarrity told the EEO Counselor that the applicants who were interviewed scored within one point of each other and Zimmerman was determined to be the best qualified and that McGarrity had the scoring sheets and would provide them to her. However, when the EEO Counselor and later the Investigator assigned to investigate Plaintiff's formal EEO complaint requested the scoring sheets, McGarrity failed to provide them.

39.    As Plaintiff's EEO complaint was being processed, he was provided with shifting explanations as to why he was not placed on the "Best Qualified" list for an interview

40.    First, during August 2019 and prior to the filing of Plaintiff's formal complaint on September 3, 2019, Plaintiff was told he was not placed on the "Best Qualified" list because he did not have a secret security clearance. However, Plaintiff challenged that explanation because a secret security clearance was not one of the "Best Qualified" criteria in the job vacancy announcement. Further, the ROI establishes that Defendant later conceded that the lack of a secret security clearance would not have been a complete bar to Plaintiff's selection for the position because he would have been afforded an opportunity to apply for the clearance and in the interim would have been provided temporary clearance.

41. Later in August 2019, a second explanation was given for not placing Plaintiff on the "Best Qualified" list, that being that Plaintiff failed to submit his college transcripts and/or diploma. However, Defendant later conceded a year later in August 2020 during the investigation into Plaintiff's formal EEO complaint, that an applicant's college degree was determined by review of the applicant's resume rather than transcripts and/or diploma.

42. Also during August 2020 by way of the ROI, a third and final explanation proffered by Defendant was that when Plaintiff questioned why he was not placed on the "Best Qualified" list, HR Specialist Nicole Bell reviewed his application and realized she had "overlooked" Plaintiff's college degree on his resume.

43. According to Ms. Bell, after she discovered her error she placed Plaintiff on the "Best Qualified" list but Matthew Zimmerman had already been appointed at that time and the Human Resources Office had been told to hold off on forwarding the corrected list and await further instruction.

44. Yet, it was during the month of August 2019 that Plaintiff questioned the basis for his non-referral for an interview for the Race Director position and Ms. Bell's oversight was not one of the two reasons proffered by Defendant at that time but instead was proffered a year later and only after the first two pretextual reasons for failing to place Plaintiff's name on the "Best Qualified" list for referral for an interview had been debunked.

45. Moreover, a request for approval of Zimmerman's appointment as Race Director with a proposed effective date of September 5, 2019 was submitted by Maida

Johnson with the authorization of William McGarrity on July 23, 2019, but the necessary approvals for Zimmerman's appointment were not obtained until September 3, 4, and 5, 2019, respectively.

46. So even if Bell's incredulous explanation is true, the suggestion that Zimmerman's appointment was irreversible at the time Bell's error was discovered is pretextual because the ROI establishes that there was time before Zimmerman's appointment was fully approved and effectuated to forward the corrected "Best Qualified" list prepared by HR Specialist Bell that included Plaintiff's name. However, William McGarrity, who as the hiring official had knowledge of the corrected list, acted with a discriminatory purpose when he told Human Resources to hold off on forwarding the corrected list and await further instruction, and then intentionally failed to provide them any instruction to avoid the likelihood that Plaintiff would be interviewed and then selected as the Race Director, instead of Zimmerman, given Plaintiff's superior qualifications.

47. When Plaintiff applied for the Race Director position in June 2019, he had almost 16 years of experience as a Sports Specialist with the ATM, with responsibility for race operations, the showcase event of the annual ATM weekend, and reported directly to the Race Director. Prior to his employment with the ATM, he had 25 years of proven leadership at IBM in financial administration and management. He retired from the Air Force Reserves in 1989, with eight years of active service. He has a Bachelor of Arts degree in Accounting from George

Washington University. He has over 45 years' experience in the sport of running, including induction into the Marine Corps Marathon Hall of Fame in 2011.

48.    In contrast to Plaintiff's qualifications, Zimmerman had five years' experience in operations and planning of DoD ceremonial and special events, which included coordinating military support to provide security for three ATM races during that period of time. He has a Bachelor of Science degree in History from the United States Military Academy, a Master of Arts degree in National Security from the Naval College of Command and Staff, and a Master of Science degree in National Security and Strategic Studies from the Naval War College.

49.    At the time Maida Johnson applied for the Race Director position, she had three years' experience with the ATM as its Marketing Manager and one of the employees she directly supervised was at that time the subject of a criminal investigation for stealing funds from the ATM by making false representations to ATM Expo vendors to obtain vendor fees which he diverted for his personal use. That employee eventually was found to have stolen at least $124,758.21 in vendor fees between January 2017 and November 2018 and as a result pled guilty to one-count of wire fraud in June 2020. Johnson has a Bachelor of Science degree in Social Sciences from the University of Maryland, a Master of Business Administration degree from Troy University, and a Doctor of Philosophy degree in Sports Management from Troy University.

50.    Plaintiff initiates this civil action after 180 days from the date of Plaintiff's filing of an appeal with the Equal Employment Opportunity Commission

11

("EEOC") seeking relief for, *inter alia,* Defendant's failure to afford him an opportunity to interview for the Race Director position because of his race and age, which resulted in Plaintiff's non-selection for the position.

**Not Considered for
Army Ten-Miler Deputy Race Director Position**

51.     When McGarrity met with Plaintiff and Marketing Manager Johnson in April 2019 (see paras. 17 and 20 above), McGarrity also informed them that Johnson had been selected as the ATM Deputy Director[2] because she had a security clearance and Plaintiff did not and during the transition period McGarrity would serve as the Acting Race Director.

52.     In Plaintiff's almost 16 years with the ATM at that time, he had no knowledge of the existence of a Deputy Race Director position in the organization nor had ever seen a job description for the position.

53.     When on May 9, 2019 Plaintiff received an email notifying him that his first level supervisor had been changed from Vandak to Johnson, Plaintiff met with McGarrity's first level supervisor, Colonel Scott Trahan, J/G3 Director, MDW, to express his concern that the change of Plaintiff's supervisor to Johnson was not consistent with the discussion had with McGarrity in April 2019. Trahan informed Plaintiff that for administrative purposes Johnson was designated Acting Race Director.

---

[2] The title "ATM Deputy Director" is also referred to herein as "Deputy Race Director."

54.     By way of the ROI issued on August 19, 2020, Plaintiff learned for the first time that former Race Director Vandak had purportedly officially designated Johnson Deputy Race Director in February 2017 by way of a non-competitive process because Johnson had a secret security clearance. Further, the request to complete the process was submitted by McGarrity and Zimmerman in August 2019 and approved in October 2019.

55.     McGarrity's April 2019 meeting with Plaintiff and Johnson was the first time Plaintiff had had any direct interaction with McGarrity in his role as Plaintiff's second level supervisor so Plaintiff had no basis to suspect that McGarrity harbored a discriminatory animus towards him. It was when Plaintiff was not afforded an interview for the Race Director position, for which McGarrity was the hiring official, that caused Plaintiff to re-examine the motivation for the selection of Johnson as Deputy Race Director and realize the discriminatory pattern of McGarrity's personnel decisions.

56.     Given Plaintiff's superior qualifications as compared to Johnson's qualifications and the fact that one of the employees she directly supervised was at the time the subject of a criminal investigation for stealing vendor fees from the ATM and for which the employee later pled guilty (see paras. 47 and 49), there is no plausible explanation for McGarrity's promotion of Johnson to the position of Deputy Race Director, NF-05, the second highest position in the ATM organization, other than that, consistent with McGarrity's discriminatory actions with respect to the

selection process for the Race Director position, it was motivated by race- and age-based animus towards Plaintiff.

57. Former Race Director Vandak's official designation of Johnson as Deputy Race Director in February 2017 was likewise motivated by a discriminatory purpose.

58. In February 2017, Johnson had been employed in the ATM office for less than a year, having been hired in May 2016 as Marketing Manager. At that time Plaintiff had been working as a Sports Specialist for the ATM since 2003, with responsibility for the operations of the ATM race.

59. Although Plaintiff was better qualified for the position of Deputy Race Director than Johnson, at that time Plaintiff was already aware that Vandak harbored an animus towards African-Americans.

60. During Plaintiff's tenure with the ATM while Vandak was Race Director (from 2003 until April 2019), approximately 22 employees came and left the organization, all were hired by Vandak, of which only five of those former employees were African-American.

61. Plaintiff also observed that Vandak consistently treated African-American employees (Plaintiff included) less favorably than non-African-American employees. For example, he would belittle the African-American employees in front of others but would not do the same with the Caucasian and other non-African-American employees.

14

62.    Plaintiff recalls a particularly upsetting event that occurred in or about 2009. The ATM office had relocated from the Crystal Gateway Marriott in Crystal City, Virginia, to the DC Amory in Washington, D.C., a predominately African-American area. Vandak received a racist voicemail message and played it back several times and loud enough for all the employees to hear, including Plaintiff and the two other African-American employees. The substance of the voicemail was that the caller was complaining about the relocation of the ATM office and included language of "moving from a white area to a *** ["N-word"] heaven."

63.    The pay grade for the Deputy Race Director position is NF-05. Thus, the failure to consider Plaintiff for the position based on his race, which resulted in his non-selection for the position, deprived him of a promotion to a higher pay grade.

64.    The lack of a secret security clearance would not have been a complete bar to Plaintiff's selection for the Deputy Race Director position because he would have been afforded an opportunity to apply for the clearance and in the interim would have been provided temporary clearance (see para. 40). So the proffer that Plaintiff's lack of security clearance was the basis for his non-selection is pretext for Vandak's race-based animus and McGarrity's race- and age-based animus towards Plaintiff.

65.    Plaintiff initiates this civil action after 180 days from the date of Plaintiff's filing of an appeal with the EEOC, and within 90 days of receipt of the EEOC's final decision denying Plaintiff's appeal, seeking relief for Defendant's failure to consider him for the Deputy Race Director position in or about May 2019 and February 2017, respectively, because of his race and/or age.

15

**Failure to Compensate for Supervisory Duties**

66.    In or about April 2017, former Race Director Vandak hired Leslie Greathouse as ATM Program Manager and assigned Plaintiff as her supervisor.

67.    Plaintiff had conducted the interviews of the three applicants for the position and made the recommendation to Vandak to hire Greathouse. Vandak informed Plaintiff that he was going to be assigned as Greathouse's supervisor because the previous employees in that position who reported to him directly did not stay.

68.    The Program Manager position was created by Vandak in 2009. Prior to the hiring of Greathouse, there had been five previous employees in that position.

69.    The Program Manager's duties included responsibility for Pentagon site operations, consisting of hospitality tent sales, design layout for tent installations, medical evacuation routes, and site sign placement; and contract administration.

70.    Depending upon the time of year, Plaintiff spent approximately 10% - 25% of his time per week performing his supervisor duties.

71.    Plaintiff conducted the 2018 performance evaluation of Greathouse and it was countersigned by Vandak and processed by Human Resources without issue. However, when in April 2019 Plaintiff attempted to submit Greathouse's 2019 performance evaluation for processing, he was informed by HR Specialist Nicole Bell that he was not coded as a supervisor in the personnel system.

72.    When Johnson was appointed Acting Race Director in May 2019, she became Greathouse's supervisor.

16

73. Defendant claims that Plaintiff was not officially recognized as a supervisor (and as such not entitled to compensation for supervisory duties) because he had to supervise more than one employee. Yet, as the ROI establishes, the declarations of HR Specialist Bell and her supervisor were equivocal as to that issue. Thus, Defendant's claim is mere pretext for Vandak's discriminatory animus based on Plaintiff's race.

74. Plaintiff initiates this civil action after 180 days from the date of Plaintiff's filing of an appeal with the EEOC seeking relief for, *inter alia*, Defendant's failure to compensate him for supervisory duties because of his race.

## COUNT I

### Violation of Title VII – Race Discrimination

75. Plaintiff repeats and realleges the allegations of Paragraphs 1 through 74, and incorporates them herein by reference.

76. Defendant, in her official capacity as the Secretary of the Department of the Army, through her agents or representatives, unlawfully discriminated against Plaintiff and denied Plaintiff equal employment opportunities for promotion and other terms and conditions of employment because of Plaintiff's race when she: (a) failed to afford Plaintiff the opportunity to interview for the position of Supervisory Sports Specialist (ATM Event Director), NF-05, which resulted in Plaintiff's non-selection for the position although he was qualified and a less qualified, Caucasian male was appointed to the position instead; (b) failed to consider Plaintiff for the position of ATM Deputy Director, which resulted in Plaintiff's non-selection for the

position although he was qualified and a less qualified, Caucasian female was promoted to the position instead; and (c) failed to compensate Plaintiff for performing supervisory duties during the period from in or about April 2017 through April 2019.

77.    As a direct and proximate result of the unlawful discriminatory employment practices committed by Defendant against Plaintiff, Plaintiff has sustained and will continue to sustain a loss of income and other employment benefits.

WHEREFORE, Plaintiff respectfully prays that this Court:

(a)    Declare that the employment practices complained of in this Complaint are unlawful in that they violate Title VII of the Civil Rights Act of 1964, as amended, 42 *U.S.C.* § 2000e *et seq.* ("Title VII");

(b)    Order that,

(i)    Plaintiff be placed into the position of Supervisory Sports Specialist (ATM Event Director), NF-05, within 30 days of the Court's issuance of its decision, with a retroactive effective date of September 5, 2019, in the event Defendant is found to have violated Title VII with respect to the non-selection of Plaintiff for the position of Supervisory Sports Specialist (ATM Event Director), NF-05, or said position and the position of ATM Deputy Director, NF-05;

(ii)    Plaintiff be placed into the position of ATM Deputy Director within 30 days of the Court's issuance of its decision, with a

18

retroactive effective date and pay grades consistent with the history of same applicable to the placement of Maida Johnson in said position, in the event Defendant is found to have violated Title VII with respect to the non-selection of Plaintiff for the position of ATM Deputy Director but not the position of Supervisory Sports Specialist (ATM Event Director), NF-05;

(iii)    Plaintiff be designated as the supervisor of ATM employee Leslie Greathouse in Defendant's records for the time period in or about April 2017 through April 2019 at a pay grade commensurate with that for a supervisor with the same or substantially equivalent experience and supervisory duties as that of Plaintiff for said time period;

(c)    Award Plaintiff damages to make Plaintiff whole for all loss of earnings and employment benefits, including but not limited to, back pay with interest, and gross up for the tax consequences of the receipt of said damages in a lump sum;

(d)    Award Plaintiff reasonable attorneys' fees and other costs incurred in this action and all the related administrative proceedings that preceded it; and

(e)    Award such other and further relief as the Court deems just and proper.

19

## COUNT II

### Violation of ADEA – Age Discrimination

78.    Plaintiff repeats and realleges the allegations of Paragraphs 1 through 77, and incorporates them herein by reference.

79.    Defendant, in her official capacity as the Secretary of the Department of the Army, through her agents or representatives, unlawfully discriminated against Plaintiff and denied Plaintiff equal employment opportunities for promotion and other terms and conditions of employment because of Plaintiff's age when she: (a) failed to afford Plaintiff the opportunity to interview for the position of Supervisory Sports Specialist (ATM Event Director), NF-05, which resulted in Plaintiff's non-selection for the position although he was qualified and a less qualified, younger male was appointed to the position instead; and (b) failed to consider Plaintiff for the position of ATM Deputy Director, which resulted in Plaintiff's non-selection for the position although he was qualified and a less qualified, younger female was promoted to the position instead.

80.    As a direct and proximate result of the unlawful discriminatory employment practices committed by Defendant against Plaintiff, Plaintiff has sustained and will continue to sustain a loss of income and other employment benefits.

WHEREFORE, Plaintiff respectfully prays that this Court:

(a)     Declare that the employment practices complained of in this Complaint are unlawful in that they violate the Age Discrimination in Employment Act, 29 *U.S.C.* § 621 *et seq.* ("ADEA");

(b)     Order that,

(i)     Plaintiff be placed into the position of Supervisory Sports Specialist (ATM Event Director), NF-05, within 30 days of the Court's issuance of its decision, with a retroactive effective date of September 5, 2019, in the event Defendant is found to have violated the ADEA with respect to the non-selection of Plaintiff for the position of Supervisory Sports Specialist (ATM Event Director), NF-05, or said position and the position of ATM Deputy Director, NF-05;

(ii)    Plaintiff be placed into the position of ATM Deputy Director within 30 days of the Court's issuance of its decision, with a retroactive effective date and pay grades consistent with the history of same applicable to the placement of Maida Johnson in said position, in the event Defendant is found to have violated the ADEA with respect to the non-selection of Plaintiff for the position of ATM Deputy Director but not the position of Supervisory Sports Specialist (ATM Event Director), NF-05;

21

(c)     Award Plaintiff damages to make Plaintiff whole for all loss of earnings and employment benefits, including but not limited to, back pay with interest, and gross up for the tax consequences of the receipt of said damages in a lump sum;

(d)     Award Plaintiff reasonable attorneys' fees and other costs incurred in this action and all the related administrative proceedings that preceded it; and

(e)     Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury.

Respectfully submitted,

C. ELSTON & ASSOCIATES, LLC
*Attorneys for Plaintiff*

DATED:  May 23, 2022

By:     /s/  *Cathlene Y. Banker*
Cathlene Y. Banker, Esq.
Bar ID: NJ042
3350 Route 138
Bldg. 2, Suite 123
Wall, NJ 07719
Tel: (732) 280-6911
Email: cbanker@elstonlaw.com