UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GEORGE R. BANKER,

    *Plaintiff*,

v.

MARK AVERILL, ACTING SECRETARY,
DEPARTMENT OF THE ARMY,

    *Defendant.*

No. 22-cv-01445 (DLF)

### MEMORANDUM OPINION AND ORDER

George Banker brings this discrimination action against Mark Averill, the Acting Secretary of the Department of the Army, under Title VII of the Civil Rights Act (Title VII), 42 U.S.C. §§ 2000e *et seq*., and the Age Discrimination in Employment Act (ADEA), 29 US.C. §§ 621 *et seq*. Am. Compl., Dkt. 28. Before the Court is the Secretary's Motion for Judgment on the Pleadings, Dkt. 38. For the reasons that follow, the Court will grant the motion.

I.    BACKGROUND

In April 2019, Banker worked as a Sports Specialist for the Department of the Army, Am. Compl. ¶ 3, where he was responsible for the "development, planning, and management of the operations" of the Army Ten-Miler (ATM) weekend events, *id.* ¶ 14. That month, ATM Race Director James Vandak retired. *Id.* ¶ 16. William McGarrity, a 54-year-old Caucasian male and the hiring official for Vandak's replacement, *id.* ¶ 21, informed Banker and Marketing Manager Maida Johnson that "they could both apply" for the position, *id.* ¶ 20. At this time, Banker also learned that Johnson was selected as the Deputy Race Director, a position which Banker was not aware of nor considered for. *Id.* ¶¶ 51–52.

In June, Banker applied for the Race Director position as a 69-year-old African American male. *Id.* ¶¶ 3, 23. At that time, he had a "Bachelor of Arts degree in Accounting," "almost 16 years of experience as a Sports Specialist," "25 years of proven leadership at IBM in financial administration and management," "eight years of active service" in the Air Force, and "over 45 years' experience in the sport of running." *Id.* ¶ 47. Though Banker's resume satisfied the "Best Qualified" criteria of a "Bachelor's Degree" and "5 or more years' experience in coordinating internal/external security, medical, and event operations for a major sporting event, national security event or DoD event involving 35,000 or more participants," HR Specialist Nicole Bell did not place him on the list of "Best Qualified" applicants from which interviewees were selected. *Id.* ¶¶ 24–25. Matthew Zimmerman, a 50-year-old Caucasian male, was selected as Race Director in July. *Id.* ¶¶ 26–27. Zimmerman had a "Bachelor of Science degree in History," a "Master of Arts degree in National Security," a "Master of Science degree in National Security and Strategic Studies," and "five years' experience in operations and planning of DoD ceremonial and special events, which included coordinating military support . . . for three ATM races." *Id.* ¶ 48.

After learning of Zimmerman's selection, Banker contacted an Equal Employment Opportunity counselor to allege discrimination from the denial of an opportunity to interview. *Id.* ¶¶ 31–32. Based on the ensuing report, Banker alleges that McGarrity "bias[ed] the selection process to favor Matthew Zimmerman, the younger, less-qualified Caucasian candidate McGarrity had pre-selected." *Id.* ¶ 32. For example, McGarrity "took Zimmerman out for a beer to talk to him about taking the Race Director position," *id.* ¶ 33, requested "the position description for Race Director [to be] rewritten . . . with Zimmerman in mind," *id.* ¶ 34, and "patt[ed] Zimmerman on the back telling him 'Don't worry brother. We got you,'" *id.* ¶ 37. Zimmerman also previously succeeded McGarrity as the Chief of Staff of the Military District of Washington, D.C. *Id.* ¶ 30.

In August 2019, Banker was first told that he was excluded from the "Best Qualified" list because he did not have a secret security clearance, *id.* ¶ 40, and then because he "failed to submit his college transcripts and/or diploma," *id.* ¶ 41. A year later, Banker was told that he was excluded because Bell "had 'overlooked' [his] college degree on his resume." *Id.* ¶42. When Bell discovered her error, Zimmerman had "already been appointed" and "the Human Resources Office had been told to hold off on forwarding the corrected list." *Id.* ¶ 43. Banker alleges that McGarrity "acted with a discriminatory purpose when he told Human Resources to hold off on forwarding the corrected list . . . to avoid the likelihood that [Banker] would be interviewed and then selected as the Race Director, instead of Zimmerman, given [Banker's] superior qualifications." *Id.* ¶ 46.

On February 29, 2024, Banker filed this operative complaint alleging race and age discrimination under Title VII and the ADEA as to the Race Director and Deputy Race Director positions. *See* Dkt. 28. On January 15, 2025, the Secretary moved for judgment on the pleadings for failure to state a claim. *See* Dkt. 38.

## II.   LEGAL STANDARD

Under Rule 12(c) of the Federal Rules of Civil Procedure, "a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "To prevail on a Rule 12(c) motion, the moving party must show that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Tapp v. WMATA*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016) (citation modified). The Court relies on "the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice." *Allen v. U.S. Dep't of Educ.*, 755 F. Supp. 2d 122, 125 (D.D.C. 2010) (citation modified). In evaluating a motion for judgment on the pleadings, the Court applies the same standard that governs motions to dismiss made under Rule 12(b)(6), *see Garcia v. Stewart*, 531 F. Supp. 3d 194,

203 (D.D.C. 2021), assuming the truth of "all of the well pleaded factual allegations in the adversary's pleadings" and taking as false "all contravening assertions in the movant's pleadings," *Tapp*, 306 F. Supp. 3d at 392 (citation modified).

Rule 12(b)(6) allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court need not accept "a legal conclusion couched as a factual allegation" nor an inference unsupported by the facts alleged in the pleadings. *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### III.   ANALYSIS

To state a discrimination claim under Title VII, a plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007). Similarly, to state a discrimination claim under the ADEA, a plaintiff must show that he (1) was at least forty years of age; (2) suffered an adverse employment action; and (3) that there was some reason to believe that the adverse employment action was based on the employee's age. *Badwal v. Bd. of Trs. of the Univ. of D.C.*, 139 F. Supp. 3d 295, 315 (D.D.C. 2015). Under both statutes, where a plaintiff offers only circumstantial evidence of discrimination and the defendant provides legitimate, non-discriminatory reasons for the adverse action, the plaintiff must then show that the defendant's proffered reasons were a pretext for unlawful discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805 (1973); *Chappell-Johnson v. Powell*, 440 F.3d 484, 487 (D.C. Cir. 2006). To determine whether the plaintiff

"produced sufficient evidence . . . that the employer's asserted nondiscriminatory reason was not the actual reason and that the employer intentionally discriminated against the [plaintiff]," *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015) (citation modified), a court considers "the total circumstances of the case, including strengths and weaknesses in the plaintiff's *prima facie* case," *Casselle v. Chao*, 270 F. Supp. 3d 314, 322 (D.D.C. 2017) (citation modified) (citing *Evans v. Sebelius*, 716 F.3d 617, 620 (D.C. Cir. 2013)).

### A.     Discrimination Claims Concerning the Race Director Position

Banker claims he was discriminated against when he was denied an opportunity to interview for the Race Director position. The Secretary contends that Banker was excluded because of a clerical mistake. Answer ¶ 42, Dkt. 30. Though Banker alleges facts to show that the Secretary's proffered reason is pretextual, he fails to support that it is pretext for unlawful discrimination.

*First*, Banker argues that he held "superior qualifications." Am. Compl. ¶ 46; *see* Pl.'s Opp'n at 12, Dkt. 40. While facts showing that a job applicant was "significantly better qualified for the job" than the person hired may raise an inference of discrimination, *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998) (en banc), "the qualifications gap must be great enough to be inherently indicative of discrimination," *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006). Considering the "qualifications necessary for the position at issue," *Alford v. Providence Hosp.*, 791 F. Supp. 2d 168, 173 (D.D.C. 2011), both Banker and Zimmerman possessed the necessary education and the event-planning experience to satisfy the "Best Qualified" criteria. *See* Am. Compl. ¶¶ 25, 47, 48. A court does not "second-guess how an employer weighs particular factors in the hiring decision," *Jackson v. Gonzales*, 496 F.3d 703, 709 (D.C. Cir. 2007), and though Banker had a longer history of planning ATM-specific events, Zimmerman had more

5

degrees and a broader range of event-planning experience, s*ee* Am Compl. ¶¶ 47, 48.  Thus, "[Banker] plainly lacked the stark superiority of credentials over [Zimmerman]" from which the Court may infer pretext.  *Porter v. Shah*, 606 F.3d 809, 816 (D.C. Cir. 2010) (citation modified); *cf. Aka*, 156 F.3d at 1296 (finding a significant difference between nineteen years of work experience and two months of volunteer experience).

*Second*, Banker argues that the Secretary proffered shifting reasons for his exclusion from the list.  Am. Compl ¶¶ 39–42; *see* Pl.'s Opp'n at 6; *see Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011) ("Shifting and inconsistent justifications" can be "probative of pretext.") (citation modified).  But the fact that "[the Secretary's] proffered reason is unpersuasive" does not mean that "[Banker's] proffered reason is correct."  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 146–47 (2000) (citation modified).  To state his claim, Banker must still show that McGarrity engaged in intentional discrimination which "only occurs when any employer acts 'because of' the plaintiff's status as a member of a protected class."  *Pollard v. Quest Diagnostics*, 610 F. Supp. 2d 1, 22 (D.D.C. 2009).  While Banker's pleadings establish his membership in protected classes, *see* Am. Compl. ¶ 32, this alone cannot raise a reasonable inference of discrimination, *see Pollard*, 610 F. Supp. 2d at 29; *Easaw v. Newport*, 253 F. Supp. 3d 22, 29 n.4 (D.D.C. 2017).

And instead of "dispel[ling] any obvious alternative explanations," *Ho v. Garland*, 106 F.4th 47, 54 (D.C. Cir. 2024), Banker's pleadings undermine any plausible inference of unlawful discrimination.  At most, McGarrity's alterations of the position description, Am. Compl. ¶ 34, his former ties to Zimmerman, *id.* ¶ 30, his hallway comments, *id.* ¶ 37, and his order to withhold the corrected list, *id.* ¶ 46, establish that McGarrity "bias[ed] the selection process to favor Matthew Zimmerman," *id.* ¶ 32.  While these facts support the notion that McGarrity "pre-selected" Zimmerman for the role because of personal bias, *id.*, they do not show that McGarrity did so

6

because of Baker's race or age, *see Baylor v. Powell*, 459 F. Supp. 3d 47, 59 (D.D.C. 2020).  Since "favoritism based on criteria other than race, color, age, or other protected characteristics does not violate the federal anti-discrimination laws and does not raise an inference of discrimination," *Kilby-Robb v. Devos*, 246 F. Supp. 3d 182, 198 (D.D.C. 2017) (citation modified); *see Oliver-Simon v. Nicholson*, 384 F. Supp. 2d 298, 310 (D.D.C. 2005), Banker "shoots himself in the foot by showing that the real explanation for the employer's behavior is not discrimination, but some other motivation."  *Thompson v. McDonald*, 169 F. Supp. 3d 170, 185 (D.D.C. 2016) (citation modified) (quoting *Aka*, 156 F.3d at 1291).  Because Banker has not asserted any facts to support that McGarrity's favoritism was the product of race or age discrimination, the Court will dismiss his discrimination claims concerning the Race Director position.

      **B.**      **Discrimination Claims Concerning the Deputy Race Director Position**

As to the Deputy Race Director position, the Secretary contends that Banker failed to timely exhaust his discrimination claims under Title VII and the ADEA.  Mot. For J. on Pleadings at 12–13; *see* 42 U.S.C. § 2000e-16(c); 29 U.S.C. § 633a(d).  Banker "does not oppose the dismissal" of these claims.  Pl.'s Opp'n at 2.  Given Banker's concession, the Court will dismiss his discrimination claims concerning the Deputy Race Director position.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the defendant's Motion for Judgment on the Pleadings, Dkt. 38, is **GRANTED**.

**ORDERED** that this action is **DISMISSED** without prejudice.  The Clerk of Court is directed to close this case.  This is a final appealable order.

**SO ORDERED.**

                                                           DABNEY L. FRIEDRICH

August 1, 2025                                                      United States District Judge